IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAUL PEASLEE and
MARY LOUISE PEASLEE,
Husband and Wife,

        Plaintiffs,

v.            CIVIL ACTION NO. 1:10CV105

KAWASAKI MOTORS CORP., USA,
a foreign corporation,

        Defendant.

TRANSCRIPT/MOTION HEARING/TELEPHONIC
August 3, 2010, at 2:00 p.m.
Clarksburg, West Virginia

BEFORE:        JOHN S. KAULL
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
For Plaintiff:        C. PAUL ESTEP, ESQ.
           Estep & Shaffer, LC
           212 W. Main Street
           Kingwood, WV 26537

For Defendant:        CLEM C. TRISCHLER, ESQ.
           Pietragallo, Bosick & Gordon, LLP
           One Oxford Center, 38th Floor
           301 Grant Street
           Pittsburgh, PA 15219

Proceedings recorded by electronic sound recording, transcript
produced by official court reporter.

SUE HATLEY, CCR
OFFICIAL U.S. COURT REPORTER
P. O. BOX 1518
ELKINS, WEST VIRGINIA 26241
(304) 614-3694
(Call to Order of the Court)

EXHIBIT

C

2

1    THE COURT:   Good afternoon.

2    MR. MARRION:    Your Honor, this is Jim Marrion, I have

3    Plaintiffs' counsel and Kawasaki's lead counsel holding on the other

4    end.  I am doing this from my office in Pittsburgh because Kawasaki's

5    trial counsel is in – out-of-state in Texas on another matter, so I was

6    the one trying to get everyone together.   So if you don't mind, I'll try

7    to get the other two gentlemen on the phone.

8    THE COURT:   That will be fine.

9    MR. MARRION:   Thank you, sir.  Thank you, Your Honor,

10   appreciate it.

11   Is Paul and Clem on the line?

12   MR. ESTEP:   Yes, sir, I am, Paul is.

13   MR. TRISCHLER:   Yes, we are.

14   THE COURT:    All right.  Is this Paul Estep?

15   MR. ESTEP:   Yes.

16   THE COURT:   And you are Plaintiffs' counsel?

17   MR. ESTEP:   Yes, sir.

18   THE COURT:   And the other gentleman is –

19   MR. TRISCHLER:   My name is Chem Trischler, Your Honor, T-

20   r-i-s-c-h-l-e-r, representing Kawasaki Motors Corp.

21   THE COURT:    Very good, sir, thank you.  This matter is

22   coming on telephonically today by Order of the Court.  It bears Civil

23   Action No. 1:10CV105.  It is a case brought by Paul Peaslee and Mary

24   Louise Peaslee against Kawasaki Motors Corp., USA, a foreign

25   corporation.

3

1          Specifically, before the Court today is Defendant's Motion for a

2     Protective Order, Docket Entry No. 11 and the Response to that Docket

3     Entry No. 11, which bears Docket Entry No. 12.

4          I have read both the Motion for Protective Order and the

5     Response as well as the medical report or medical letter to the

6     attorneys of record signed by Dr. John J. Keefe, K-e-e-f-e.

7          Does the Defendant desire the Court to have anything in addition

8     to that which it has supplied in its Motion for Protective Order?

9          MR. TRISCHLER:     May it please the Court, Your Honor, thank

10    you for your time and prompt consideration of this Motion for

11    Protective Order.   On behalf of the Defendant, Kawasaki Motors

12    Corp., I do not have anything additional in the way of documentation

13    to submit to the Court in – in consideration of our Motion for

14    Protective Order.  I do think that there are a couple of basic points, if

15    the Court is inclined to hear argument, that I'd like to simply bring to

16    the Court's attention.

17         THE COURT:    Sure.  Go ahead, Mr. --

18         MR. TRISCHLER:     That we can amplify what we have already

19    submitted as opposed to, I think the Court's immediate question,

20    whether we had anything else in particular to submit.

21         THE COURT:    Go ahead, Mr. Trischler.

22         MR. TRISCHLER:     Thank you, sir.   Certainly, neither I nor

23    my client is unsympathetic to – to Mr. Peaslee's medical condition but

24    I would submit to the Court that I believe the Motion for Protective

25    Order that we filed is one of fundamental fairness.   What the Plaintiff

4

1    seeks to do through this deposition that I believe has been noticed in

2    violation of the Federal Rules of Civil Procedure, is to preserve

3    testimony on this Friday and to create trial evidence in a way that's

4    unfairly prejudicial to Kawasaki.

5            First and foremost, it's unfairly prejudicial because I am trial

6    counsel for Kawasaki and I am simply unavailable on the 6th.   I have

7    longstanding professional commitments to other clients this week.  I

8    am in Texas at the moment and will be in Connecticut on Friday, and I

9    have relayed those to Mr. Estep.   But as of this moment, he is

10   insisting on proceeding on the 6th and by proceeding on the 6th, he is

11   intending to proceed at a time when the Defendant has absolutely– this

12   is a product liability case and the Defendant has absolutely no

13   information regarding the maintenance and use history of this machine.

14   We have no information regarding the identify of eyewitnesses, if any.

15   We have no information regarding the injuries and damages being

16   claimed by the Plaintiffs as a result of this incident beyond that which

17   is alleged in the Complaint.   We have no information regarding the

18   circumstances of the accident beyond that which is alleged in the

19   Complaint and we don't even have the benefit of the Rule 26(a) initial

20   disclosure that I think we should be ordinarily entitled to.

21           I began my statement to the Court by indicating that I am not

22   unsympathetic to Mr. Estep's plight and the condition of his client and

23   I believe, I have made a very fair proposal that would allow him to

24   preserve testimony but at the same time getting the – the information, I

25   think I need to conduct a cross-examination.   And essentially, what I

5

1    asked for was simply that the deposition be pushed back a few days to

2    a time when I am available that the Plaintiffs before –

3            THE COURT:    What was your recommendation relative to a

4    few days?

5            MR. TRISCHLER:    I – the day I recommended, sir, was eight

6    o'clock the 14th of this month.    August 14th, so I ask that it be moved a

7    period of eight (8) days.    The – in that interim, I was – had asked that

8    the Rule 26  – Plaintiff's Rule 26(a) disclosure be filed so that we

9    could have accident reports, medical records, things of that nature.

10   We – we have already done a lot of work to try to line up an inspection

11   of the vehicle which my expert will be doing on the 6th.  I will not be

12   there, of course, but my expert is doing it because I am having him try

13   to get there as quickly as possible so that we could be in a position to

14   cross-examine.  And I, also, ask for a brief discovery deposition that I

15   – what I had envisioned was if we can agree on an alternative date, be

16   it the 14th or some other date that I could conduct a two hour discovery

17   deposition in the morning certainly sensitive to Mr. Peaslee's stamina

18   and his ability to respond to questions at whatever time he needs.  But,

19   just a few hours so that I could find out what it is he knows about or

20   recalls about the circumstances of the accident, so that I then have

21   some fundamental base of information upon which to prepare a cross-

22   examination that we could conduct later in that day after the witness

23   has sufficiently rested.

24           My thought was that that proposal was a fair balance in terms of

25   the Plaintiffs' need for the testimony and their understandable right to

6

1    preserve it with the Defendant's fundamental right to conduct a cross-

2    examination that is a meaningful one, sir.   And that – I – we made

3    that proposal, it was rejected by the Plaintiffs and hence that's what

4    led to the Motion for Protective Order.

5         And as I said, I think that if – I would hope that the Court would

6    be understanding of the Defendant's position, that if this is going to be

7    trial testimony that we are confronted with before there has been any

8    pretrial disclosures before there has been a Rule 26 "meet-and-confer"

9    conferences, that there has to be some concessions given to the

10   Defendant so that they can conduct a meaningful fair cross-

11   examination. And that's what I'm looking for through this motion

12   which, unfortunately, we were not able to resolve amongst ourselves.

13        THE COURT:   All right, thank you, Mr. Trischler.   How

14   about you, Mr. Estep?

15        MR. ESTEP:   Your Honor, I'd like to point out that what the

16   Defendant seeks to do is to delay this preservation deposition until it's

17   simply too late.   And I'm sorry, to inform the Court that that may

18   have already happened. I visited with Mr. Peaslee this morning and

19   his condition has deteriorated remarkably even since the last time I

20   saw him. As of this morning, he was unresponsive and probably

21   already not able to give testimony.  We are hopeful that he will rally,

22   that he will regain some of his consciousness and be able to give

23   testimony in the next few days, although, that's certainly in doubt.

24        What Mr. Trischler seeks is – is more time and nobody would be

25   happy to give Mr. Peaslee more time, nobody would be happier about

7

1     that than I.   But, unfortunately, this man doesn't have another few

2     days and I'm not sure he has until Friday to be honest about it.

3           All I am seeking to do is to preserve Mr. Peaslee's testimony and

4     for some reason Mr. Trischler insists upon resisting the preservation of

5     that testimony.

6           THE COURT:   Well, wait a minute –

7           MR. ESTEP:   His testimony won't be –

8           THE COURT:    Now, wait a minute!

9           MR. ESTEP:    – held –

10          THE COURT:    Counsel, counsel, wait a minute!  I – I didn't

11    hear that and I don't think this is about counsel trying to prevent you

12    from preserving Mr. Peaslee's testimony.   There were some issues

13    that he raised and they were legitimate issues.   Whether or not they

14    can cause the Court to delay the taking of the deposition until next

15    week, that hadn't been decided yet.

16          Now you tell me that as of this morning your client was

17    unresponsive.  You were in his house?

18          MR. ESTEP:   I was, Your Honor, yes.

19          THE COURT:   And his house is in Kingwood?

20          MR. ESTEP:   Yes, Your Honor, it is.

21          THE COURT:   And my understanding from the doctor was, that

22    he was being medicated but at the time his doctor wrote his letter, that

23    he was lucid and capable of making, in the doctor's opinion, a

24    deposition.

25          MR. ESTEP:   That's true.  And the doctor was hopeful that he

8

1    would be for a period of two weeks.

2        THE COURT:   But would not guarantee that?

3        MR. ESTEP:   But would not guarantee that, yes.

4        THE COURT:   Now when you say unresponsive, be specific.

5    What did you observe that led you to make the statement that "your

6    client this morning was unresponsive".

7        MR. ESTEP:   Your Honor, I am not sure that he knew who I

8    was.  I walked in and – and greeted him.  He mumbled his responses

9    and it wasn't at all clear to me that he would even recognize who I

10   was.  He wasn't able to give meaningful answers to any questions as

11   simple as – as "good morning, how are you".   He was – he was really

12   in rough shape and he's on – I also point out that he's, I think just

13   over the weekend been put on Morphine twice daily which is a new

14   development.

15       THE COURT:   And that's a condition that was in existence at

16   what time this morning?

17       MR. ESTEP:   Oh, I was there at about 10:00 a.m. or so.

18       THE COURT:   Did his condition improve any during the

19   period of time you were there?

20       MR. ESTEP:   No, no.  I was only there a few minutes and I

21   didn't want to disturb him.  I was told by the family that as of

22   Saturday, his condition was fairly good and that he was able to – to

23   conduct some of his own business affairs.  Some important matters that

24   he was able to take care of reasonably well and that his condition

25   deteriorated then Sunday and Monday.

9

1    THE COURT:    Are you –

2    MR. ESTEP:    Hopeful that – that it may come back and it just

3    be a setback from which he – from which he is able to rally but we

4    don't know that.

5    THE COURT:    What – let me look at something here just a

6    second, please.

7    MR. ESTEP:    He's also –

8    THE COURT:    This says he has metastatic lung cancer.   Do

9    you know where it has metasticized to?

10    MR. ESTEP:   It's everywhere.   It metasticized first to his – to

11    his liver, I think and since then it's just spread all throughout his body

12    and that happened fairly quickly.   I mean, we – we didn't know about

13    the diagnosis until – just until recent weeks.

14    He is now under 24 hour --

15    THE COURT:    What!

16    MR. ESTEP:    – care including Hospice Care.

17    THE COURT:    Is he under Hospice Care now?

18    MR. ESTEP:   He is.   Yes, Your Honor.

19    THE COURT:    Mr. Estep, where are you with respect to ability

20    to make your – the accident report and other things that might be a

21    part of the 26 disclosure.   Where are you with respect to that?

22    MR. ESTEP:    I have already consulted an expert some weeks

23    ago.  I don't have the report yet but I would expect to have it within

24    days, hopefully, and I may well be able to have it prior to the – prior

25    to the planned deposition.

10

1    THE COURT:    Well, but what about – was there an accident

2    report conducted by the police or anything?

3    MR. ESTEP:    No, it happened on private property so there was

4    nothing other than an EMS report, which I can provide that.  I have

5    accumulated some 1500 pages of medical records just from this

6    accident, which I have.  I received back from a copying service today

7    and can provide to Mr. Trischler by overnight mail, if necessary.  But,

8    there is no police report.

9    THE COURT:    All right.  So you've got – let me make sure I

10   understand this.  You have medical records, you have an EMS report?

11   MR. ESTEP:    Yes.

12   THE COURT:    Do you have any family that were witnesses?

13   MR. ESTEP:    No, no.  Well, there was – there was a brother

14   who showed up at the scene and found him after the accident.  He

15   didn't actually see the accident.  He was a witness to the aftermath.

16   We have some fire department folks that showed up when the EMS was

17   called.

18   THE COURT:    Do you have their identities?

19   MR. ESTEP:    We do.

20   THE COURT:    Do you have addresses and telephone numbers?

21   MR. ESTEP:    We do.  And if we don't, we can get them.

22   THE COURT:    How's that?

23   MR. ESTEP:    We do, Your Honor, and if there are some that

24   we are lacking, I'm sure we can get them very easily, it's a small town

25   and we're familiar with most of them.  But, I think we already do have

11

1   them all, yes.

2        THE COURT:    All right.  What else do you have that pertains

3   to the claims that have been made in this civil action?

4        MR. ESTEP:   The only other thing I have is the Kawasaki

5   Mule that we believe caused the accident.

6        THE COURT:   But they are –

7        MR. ESTEP:   Offered Mr. Trischler to – to view, to look at,

8   to have his expert look at any time he wants.

9        THE COURT:   That's been seen – being seen this Friday at

10   what time?

11        MR. ESTEP:   I believe at 10:00 a.m.

12        THE COURT:   And where is it located?

13        MR. ESTEP:   It's located here in Kingwood, not more than a

14   mile from my office.

15        THE COURT:   All right.  Now with respect to the deposition,

16   you filed a notice with respect to this deposition, did you?

17        MR. ESTEP:   I did, Your Honor.

18        THE COURT:   What time did you notice it for?

19        MR. ESTEP:   1:00 p.m.  The same day as the inspection and I

20   chose that day because I knew Mr. Trischler or a member of his firm

21   would be present for that inspection and could attend the deposition.

22        THE COURT:   Understood.  What about – what's the means

23   that you were proposing to use to take this deposition?

24        MR. ESTEP:   I have called a court reporter, who would report

25   it stenographically, and I have a videographer, who will videotape it.

12

1          THE COURT:    All right.  Anything else from your portion of

2     the case?

3          MR. ESTEP:    Well, we – I point out too, that we have noticed

4     the deposition in the home at Mr. Peaslee's bedside because, of course,

5     he's confined to home.

6          THE COURT:    Yeah.

7          MR. ESTEP:    That's local and shouldn't be any problem.  I'd

8     suggest that there is absolutely no prejudice to the defendant in simply

9     preserving this testimony.   If Mr. Trischler wants to argue later that

10    for whatever reason this ought not to be introduced into evidence, I

11    suppose he's free to argue that.  But, we only have one chance to

12    preserve it and I'm not sure at this point we even have that chance

13    anymore.  I hope we do but I don't know.

14         THE COURT:    Do you have any written statements by your

15    client?

16         MR. ESTEP:    No, we have no written statements and he's not –

17         THE COURT:    Did he give you any written statements to the

18    EMS people?

19         MR. ESTEP:    He did not.

20         THE COURT:    Did he give any written statements to the

21    doctors who attended to his care?

22         MR. ESTEP:    I am not aware of any written statements period.

23         THE COURT:    So the only thing that would be there would be

24    – was he able to verbalize history?

25         MR. ESTEP:    I think he probably – probably said something to

13

1    the EMS folks or to the – to the – to the people in the Emergency

2    Room.  Of course, we have those records.

3          THE COURT:    And you have their names and contacts?

4          MR. ESTEP:    Well, to the extent that they are in the records,

5    we do.

6          THE COURT:    Well –

7          MR. ESTEP:    The local folks we know.  Now when he was

8    taken to Morgantown to the hospital, I don't know those folks and if

9    they are in the medical records then we have them.   Here locally, I

10   can identify just about everybody.

11         THE COURT:   All right, thank you.  Mr. Trischler.

12         MR. TRISCHLER:   Yes, sir.

13         THE COURT:    As you can tell, this presents a unique dilemma,

14   one that we all hope we never have to face.   What – I don't even know

15   that if I were to keep it on the Friday that it will even take place.

16         MR. TRISCHLER:    Well, I – I'm sorry if I cut you off, Your

17   Honor, it's hard over the phone to know when everyone is finished

18   talking.  If I cut you off, I apologize.  I, certainly, agree that the

19   Court's confronted with a unique dilemma and I – and I certainly can

20   tell by the Court's comments that the Court understands the position of

21   both parties and would like to come up with a solution that is – that's

22   fair to both and that's essentially, all that I am asking.

23         Mr. Estep, has indicated that they have 1500 pages of medical

24   records and they've got an EMS report.  Certainly, I would have liked

25   those things you know, ten (10) days ago when we first started dealing

14

1    with this issue.  Getting them now, best case probably Wednesday or

2    Thursday, is certainly disadvantageous.  There is also the practical

3    problem of -- I just cannot physically be there on the 6th and –

4          THE COURT:    Well, what are you doing on Monday?

5          MR. TRISCHLER:     Well, I was going – I don't know because I

6    am speaking on my Blackberry right now which has my calendar and

7    I'm not skillful enough to look it up but I would – I would even be

8    able – be willing, Your Honor, if we can get the file materials that Mr.

9    Estep has identified during today's hearing by Thursday.  I'd even be

10   willing to do it on – on Saturday the 7th or Sunday the 8th.   I know I'm

11   free those days other than personal things.

12          As long as I have a chance to review what's there and then I – I

13   would like a chance before the preservation deposition is done to ask

14   Mr. Peaslee what happened.   How did this accident occur.   And just

15   so I can hear it without having to make the judgment call "cold" on

16   cross-examination that I want to get into that subject with the witness

17   or not.  I don't think that would be unfair prejudicial to the plaintiff so

18   if we can get the – I proposed the 14th but if we can get the medical

19   records as Mr. Estep's indicated, I'd be willing to do it on the 7th, 8th

20   or 9th, if I'm – if I'm available on the 9th.  And the situation is as – as

21   dire as Mr. Estep has indicated and I have no information one way or

22   the other that suggests that it is or is not.  I'd be willing to come down

23   there on the 7th which is just – we're talking now about moving it back

24   18 hours from when it's noticed so that I can get the information, be

25   there and have an opportunity to question him initially.   If his

15

1   situation remains the same, I doubt that we even have – well, I suspect

2   we'll have competency issues and it will be a very quick – quick day.

3   But, I would like the opportunity to be there myself in – in deference

4   to my client and their wishes and I think their right to have the lawyer

5   that they want there --

6          THE COURT:   Sure.

7          MR. TRISCHLER:    – and that would clearly going to be an

8   important proceeding.

9          THE COURT:   All right. Mr. Estep, and Mr. Trischner, and

10  Mr. Marrion, the Court's going to have to take the bull by the horns

11  using something that a former circuit judge here in this area used to

12  say all the time and I'm going to take up Mr. Trischner on his offer of

13  the 7th at one o'clock in the afternoon for Mr. Peaslee's deposition

14  assuming, he is capable at that point and only you people will be able

15  to determine that, not me.

16         So I'm afraid you are going to have to make the trip, Mr.

17  Trischler, unless, things get so bad that Mr. Estep calls you and tells

18  you that there is no possible way that it can happen on, you know, on

19  any day.

20         So it will be Saturday the 7th at one o'clock at Mr. Peaslee's

21  house.   The Plaintiff will supply overnight mail, the 1500 pages of

22  medical, the EMS Report, the names, telephone numbers and addresses

23  of those family members who came after the fact, including, the

24  brother, of the EMS people that are local to Kingwood, and that's to be

25  overnight mail tonight.

16

1    Mr. Trischler will have between 12:30 and one o'clock in the

2    presence of Mr. Estep to visit with Mr. Peaslee before the start of the

3    one o'clock deposition to have an informal discussion concerning what

4    Mr. Peaslee is able to say happened at the time of the accident and

5    other – other matters that might be pertinent to the deposition.      The

6    deposition will be evidentiary.  It will be video – it will be taken by a

7    court reporter and videographer.  Objections will be by rule number

8    without argument.   The Defendant will have the option of deferring or

9    continuing cross-examination but it's all at the Defendant's risk that

10   Mr. Peaslee may not be able to do that at a future date.

11       It is absolutely essential that the Defendant have these medical

12   records, and EMS Report, witnesses and their identities and contact

13   numbers by overnight mail in order for this deposition to go forward.

14       Is any of that impossible for you to perform, Mr. Estep?

15       MR. ESTEP:    It is not, Your Honor.  I can produce the some

16   1500 pages of medical records I have, understanding there may be

17   something out there that I do not have --

18       THE COURT:   Well --

19       MR. ESTEP:    – but, certainly, I will give him everything that I

20   do have.

21       THE COURT:    I can't ask you to do what you don't have and

22   we just need to take care of this now and see what happens.  Don't

23   know that Mr. Peaslee will be able to give a deposition on Saturday

24   but I do appreciate counsel's willingness to take time on the weekend

25   to do this.  It is important and we'll see what happens.

17

1           Is any of that impossible for you to perform given the parameters

2    that I have outlined, Mr. Trischler?

3           MR. TRISCHLER:   No, sir.

4           THE COURT:   Well, then that will be the **ORDER** of the Court.

5    I will incorporate it in a Memorandum Order, pursuant to the Order of

6    Reference that was sent to me yesterday.

7           MR. ESTEP:   Your Honor, if I could add one more thing.

8           THE COURT:   Yes, sir, Mr. EStep.

9           MR. ESTEP:   I responded to the Court's question as to whether

10    there were any written statements and there are not, at least, not to my

11    knowledge.  But, it's occurred to me that if Mr. Peaslee does regain his

12    faculties in the next several days, I may wish to take a recorded

13    statement of him on my own.  And if I do that I would – I would give

14    Mr. Trischler notice of my intent to do so and we could take up the

15    matter of its admissibility later.

16           THE COURT:   I understand.

17           MR. ESTEP:   I just thought I should put that on the record.

18           THE COURT:   Well, I understand and that's a future issue as to

19    admissibility and a whole host of other things but at this juncture, I

20    have ruled on the motion that is presently before me.  So to some

21    extent the – for the Clerk's notes, the Motion for Protective Order is

22    **GRANTED** because I have set parameters and set a date for the

23    deposition to take place.

24           Now is there anything further I can do for either one of you

25    today?

18

1        MR. TRISCHLER:   On behalf of the Defendant, no, Your

2   Honor, other than if I may ask, I probably should have asked at the

3   outset.   Was there a court reporter with us today preparing a transcript

4   or –

5        THE COURT:   Oh, absolutely.

6        MR. TRISCHLER:   Okay, I was not –

7        THE COURT:   This --

8        MR. TRISCHLER:   – I was not sure --

9        THE COURT:   All federal courts are courts of record.

10        MR. TRISCHLER:   Understood, sir.  And since – since we are,

11   all of today's proceedings have been on the record then I would just

12   indicate for purposes of the record realizing that the issue is not before

13   the Court, that given the representations that have been made regarding

14   Mr. Peaslee's current condition, I would object to any attempt by

15   counsel to obtain an ex-parte statement from him at this point in time

16   to use that prior to the evidentiary deposition on – on Saturday.  I just

17   want to make that – I didn't want my silence to be construed as any

18   position other than an objection to that suggestion by – by Plaintiffs

19   and understanding that that's a bridge that we'll cross, if, and when we

20   get there.

21        THE COURT:   All right, very good.   There being nothing

22   further, this matter will be in recess and somebody should either email

23   my office or call my office and let us know, for no other reason than

24   our own curiosity, to be satisfied as to what happens on Saturday.  And

25   the Court's well wishes go with Mr. Peaslee and his family in this